IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WHITNEY PHILLIPS and IAN PHILLIPS,
Plaintiffs,
v.

Case No. 3:23-CV-01041-TJC-MCR

ASHLEY GRAYSON and DIGITAL COURSE RECIPE,
Defendants.

## AMENDED COMPLAINT

### I. INTRODUCTION

1. Plaintiffs Whitney Phillips and Ian Phillips, citizens of Florida, bring this action against Defendants Ashley Grayson, a citizen of North Carolina, and her business Digital Course Recipe, alleging negligence, invasion of privacy and infliction of emotional distress arising from the unauthorized disclosure of confidential information.

### II. JURISDICTION

2. **Subject Matter Jurisdiction**:

   a. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a)(1), which grants federal jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs, Whitney Phillips and Ian Phillips, are citizens of Florida. Defendant, Ashley Grayson, is a citizen of North Carolina.

    b. This action satisfies the diversity of citizenship requirement under 28 U.S.C. § 1332(a)(1), as Plaintiffs and Defendant are citizens of different states, and the damages sought exceed the statutory threshold.

    c. Therefore, this Court has proper subject matter jurisdiction to adjudicate the claims asserted by Plaintiffs against Defendant.

3. **Personal Jurisdiction**:

    a. Ashley Grayson, while not a resident of Florida, has sufficient minimum contacts with the state. This includes owning a business registered in Florida, employing individuals who reside within the state. (*Exhibit 1*)

    b. Ashley Grayson's actions, specifically the unauthorized disclosure of personal information, occurred online and could reasonably be argued to have targeted individuals within Florida, thereby invoking jurisdiction under Florida's long-arm statute.

    c. The online platform utilized by Ashley Grayson, specifically her publicly accessible Facebook page with over 400,000 followers, is not a mere passive website. This platform, as demonstrated by the unauthorized disclosure, permits interactive communication with a wide audience. In this regard, Plaintiffs refer to *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D. Pa. 1997)*, which categorizes internet use on a spectrum from passive to interactive in determining personal jurisdiction.

4. **Additional Considerations**:

    a. The nature of the case involves significant harm and damages incurred in Florida, including emotional distress, financial losses, and the need for ongoing credit

monitoring. These impacts directly relate to the jurisdictional claims, as the effects of Ashley Grayson's actions have had substantial repercussions within the state of Florida.

## II. FACTUAL BACKGROUND

1. **Relationship and History:**

    a. Whitney Phillips and Ashley Grayson were former friends and business associates.

2. **Incident Description:**

    b. On August 10, 2023, Ashley Grayson publicly posted a screenshot of Whitney Phillips' tax document on Facebook, exposing sensitive personal information that included the following: social security number, Name, home address and income details. (*Exhibit 2*)

    c. Whitney Phillips was notified via facebook messenger by a facebook follower of this disclosure around 3pm eastern on 8/10/23

    d. Upon being alerted, Whitney Phillips sent an email to Ashley Grayson immediately after her knowledge of this post requesting that she remove the screenshot. (*Exhibit 3*)

    e. In the original communication of this tax document in March 2022. Whitney Phillips explicitly advises Ashley Grayson to cross her out of the screenshot if she ever posted it. (*Exhibit 4*)

    f. The facebook post was public and remained visible despite Whitney's request for its removal until 8:00 pm Eastern, causing immediate distress and safety concerns for Whitney and her family.

g.  Defendants' actions occurred against the backdrop of Defendant Grayson's involvement in an ongoing criminal case concerning a murder-for-hire plot against a former friend. Defendant was charged on 6/29/23 *(Exhibit 5)* and Grayson was found guilty in March of 2024, of conspiring to facilitate this crime, which garnered widespread media attention and public scrutiny. (*Exhibit 6*)

h.  Plaintiffs, aware of Defendant Grayson's criminal case and its implications, expressed genuine fear and distress upon learning of the unauthorized disclosure of their personal information to Defendant's large and potentially hostile online following.

i.  In response to the unauthorized disclosure and ensuing safety concerns, Plaintiffs were compelled to relocate abruptly, uprooting their family and homeschooling their children.(*Exhibit 7*) They initially endured inadequate living conditions in a hotel without basic amenities, followed by temporary housing arrangements, significantly disrupting their personal and professional lives.

j.  Between 8/11-9/1/2024 the plaintiffs utilized Airbnb's and hotels for housing. (*Exhibits 8-10*)

k.  Plaintiffs received identity alerts within 24 hours of the public disclosure. (*Exhibit 11*)

l.  On 8/15/24, the plaintiffs signed a listing agreement to have their home put on the market for sale as they didn't feel safe. (*Exhibit 12*)

m.  Plaintiffs' efforts to sell their home were obstructed by contractor errors, perpetuating financial strain and delaying justice. Despite listing the property for sale and engaging in efforts to relocate, no viable offers were received due to

ongoing home presentation issues stemming from the contractors' faulty workmanship. The property was listed for sale just four days after the incident occurred.

### III. CLAIMS FOR RELIEF

3. **Negligence**: Defendants owed Plaintiffs a duty of care to safeguard their confidential information. By negligently posting Plaintiffs' private details on social media, Defendants breached this duty, causing Plaintiffs severe emotional distress and financial harm.

    a. **Legal Basis**: Under Florida law, a duty of care exists to protect confidential information. The unauthorized disclosure of such information constitutes negligence (*Zell v. Meek*, 665 So. 2d 1048 (Fla. 1995)).

4. **Negligent Infliction of Emotional Distress (NIED)**: Defendants' actions were negligent and directly resulted in Plaintiffs suffering severe emotional distress. The fear and anxiety caused by the unauthorized disclosure, compounded by Defendant Grayson's criminal background and the nature of her online following, exacerbated Plaintiffs' distress beyond reasonable bounds.

    a. **Legal Precedent**: Florida recognizes claims for NIED where the defendant's conduct is negligent and causes severe emotional distress (*Muller v. Methodist Hosp. of Indiana*, 525 So. 2d 1062 (Fla. 1988)).

5. **Invasion of Privacy**: Defendants' negligent posting of Plaintiffs' confidential information on social media constitutes an invasion of Plaintiffs' privacy rights under Florida law.

    a. **Legal Basis**: Florida recognizes a cause of action for invasion of privacy where there is an unreasonable intrusion upon the seclusion of another. Defendants' unauthorized

disclosure of Plaintiffs' personal information to a vast online audience constitutes such an intrusion (*Miller v. Allstate Ins. Co.*, 573 So. 2d 24 (Fla. 1990)).

6. **Punitive Damages**: Plaintiffs seek punitive damages against Defendants to deter similar misconduct in the future and to punish Defendants for their reckless disregard of Plaintiffs' rights and well-being.

    a. **Legal Standard**: Punitive damages may be awarded under Florida law where the defendant's conduct demonstrates intentional misconduct or gross negligence (*White Const. Co. v. Dupont*, 455 So. 2d 1026 (Fla. 1984)).

## IV. DAMAGES

7. **Compensatory Damages**:

    a. **Emotional Distress**: Plaintiffs suffered severe emotional distress, fear, and anxiety as a direct result of Defendants' actions. Both Plaintiffs intend to undergo professional evaluations scheduled for 08/15/2024 to assess the extent of their emotional distress, which has significantly impacted their daily lives, including their ability to conduct business effectively and maintain their household.

    b. **Legal Justification**: Florida law allows recovery for emotional distress without requiring specific evidence of economic loss where the distress is severe and foreseeable (*Singer v. State*, 109 So. 3d 213 (Fla. 2013)).

    c. **Impact on Family and Children**: The unauthorized disclosure forced Plaintiffs to abruptly relocate from their primary residence to ensure safety, uprooting their children from their established routines and friendships. This disruption to their daily lives and

social connections caused additional stress and emotional turmoil for Plaintiffs and their children.

d. **Homeschooling Timeline**: Following the incident, Plaintiffs transitioned their children to homeschooling due to safety concerns and disruption of their regular schooling environment. The homeschooling period spanned from September through December, with a schedule from 8am-3pm Monday through Friday. This amounted to a total of 35 hours per week of lost business productivity for both parents over the span of four months.

e. **Financial Losses**:

   I. **Lost Income**: Disruption of Plaintiffs' professional activities, including significant income loss and reduced clientele due to personal safety issues and homeschooling obligations.

   a. Whitney Phillips' business relies on client engagement for revenue, and the disruption caused by the incident resulted in a $118,000 differential in income compared to the same period in the prior year for one of her businesses. (*Exhibit 13*)

   b. One of Whitney Phillips' tax businesses that relies on early marketing and engagement during the months of October-December and had a loss of over $85,000 compared to the year prior due to her inability to be hands-on in her business. (*Exhibit 14*)

   II. **Relocation Expenses**: Plaintiffs incurred substantial expenses due to relocating from their primary residence to ensure safety:

      c. Rent payments of $2,600 per month for three months ($7,800 total).

      (*Exhibits 15 & 16*)

      d. Airbnb costs totaling $1,384 for 10 days. (*Exhibits 9 & 10*)

      e. Hotel expenses of $300.

III. **Mortgage and Additional Costs**: While displaced, Plaintiffs continued to pay the mortgage on their primary residence, totaling $2,500 per month for four months totaling $10,000.

IV. **Other Expenses**: Additional costs such as U-Haul rental, food expenses due to eating out, and travel costs for property showings further burdened Plaintiffs

V. **Elderly Care Costs** : Plaintiffs serve as primary guardians for Percie Phillips, their mother-in-law, who was moved to a nursing home in November 2023 as a result of the plaintiffs' altered living circumstances. The ongoing monthly expenses for her care exceed $5,000, which includes an initial community fee of $3,000 for admission to the facility. As of the filing of this amended complaint, the total expenditure for her care amounts to $47,000. (*Exhibit 17*)

VI. **Potential Future Damages**: Plaintiffs face the ongoing risk of identity theft and future financial loss due to the unauthorized exposure of their personal information to a large, unvetted audience. This potential harm is exacerbated by Defendants' negligent handling of sensitive data, which increases the likelihood of malicious use or exploitation. The average rate of credit monitoring across all three credit bureaus is $39.99 per month. Using this rate calculation for two individuals for a minimum of 15 years: $14,396.

8. **Punitive Damages Justification**:

a. **Legal Precedent**: Courts in Florida have awarded punitive damages where the defendant's conduct demonstrates a conscious disregard for the rights and safety of others (*Atlantic Coast Line R. Co. v. Daniels*, 183 So. 2d 297 (Fla. 1966)).

b. **Defendant's Conduct**: Defendant Grayson's involvement in a criminal case involving a murder-for-hire plot underscores the seriousness of her actions and the heightened harm caused by her negligent handling of Plaintiffs' confidential information.

## V. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Honorable Court to grant the following relief:

1. Compensatory damages in an amount of $2,000,000, which includes damages for emotional distress, financial losses, credit monitoring, and associated costs.
2. Punitive damages as deemed appropriate by the Court.
3. Costs and fees incurred in prosecuting this action.
4. Such other and further relief as the Court deems just and proper.

**DATED** this 30th day of July, 2024.

Respectfully submitted,
By:/s/ Whitney Phillips
Whitney Phillips
Ian Phillips
(Pro Se Plaintiffs)

(904)597-9221  
Wmbryant327@icloud.com  
3508 Rustlewood Ct  
Middleburg FL 32068

[Remainder of document intentionally left blank]

CERTIFICATE OF SERVICE

I hereby certify that on this day, I have emailed a copy of this Amended Complaint to the opposing counsel via electronic mail as per the Rules of Civil Procedure.

DATED:7/30/24

Respectfully submitted,

By:/s/ Whitney Phillips
Whitney Phillips
Ian Phillips
(Pro Se Plaintiffs)
(904)597-9221
Wmbryant327@icloud.com
3508 Rustlewood Ct
Middleburg FL 32068